STATE of Maine

v.

David JONES.

Supreme Judicial Court of Maine.

June 22, 1978.

Thomas E. Delahanty, II, Dist. Atty., John B. Cole (orally), Asst. Dist. Atty., Auburn, for plaintiff.

Gaston M. Dumais (orally), Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

DUFRESNE, Active Retired Justice.[1]

Indicted for unlawfully selling cannabis to one Deborah M. Conroy on February 21, 1975 in violation of 22 M.R.S.A., § 2384,[2] David Jones, the defendant, on October 30, 1975 was found guilty by a Franklin County jury of the offense charged. He appeals from the judgment of conviction. We deny the appeal.

The defendant's main contention on appeal is that the record contains insufficient evidence to disprove the defense of entrapment and, consequently, he argues the presiding Justice committed reversible error when he did not grant his motion for judgment of acquittal.

As a threshold question, we must determine whether the defendant has adequately preserved for appeal the point of the sufficiency of the evidence in regards to proof by the State of the absence of entrapment beyond a reasonable doubt.

■ The record reveals that the defendant moved for a judgment of acquittal at the close of all the evidence and that the presiding Justice took this motion under advisement, pursuant to Rule 29(a), M.R. Crim.P.[3] However, the record fails to indicate whether the presiding Justice ever formally acted upon the motion. Rule 37(a) of the Maine Rules of Criminal Procedure provides in part that

"[a]n appeal from a judgment, whenever taken, preserves for review any claim of error in the record including any claim of error in . . . the *denial* of a motion for judgment of acquittal . . .." (emphasis added)

Since it does not appear that the presiding Justice expressly denied the defendant's motion for acquittal, a proper foundation has not been laid in the trial court for our review of the claim of insufficiency of the evidence respecting the reference issue. See *State v. Rowe,* Me., 238 A.2d 217, 220 (1968).

On the other hand, during the sentencing hearing on October 31, 1975, the presiding Justice expressed his opinion that the record contained sufficient evidence to negate the entrapment defense. This points to the fact that, had the defendant then renewed his motion for judgment of acquittal pursuant to Rule 29(b), M.R.Crim.P.,[4] the same would have been denied. We also recognized that this Court has an obligation to review obvious error affecting the substantial rights of the accused, even though such defects were not properly preserved for appeal. See *State v. Hanson,* Me., 331 A.2d 375, 378 (1975); *State v. Rowe,* supra. We have, accordingly, chosen to review this point of appeal as if the presiding Justice had in fact expressly denied the defendant's motion.

■ A motion for judgment of acquittal should be granted "if the evidence is insufficient to sustain a conviction of such offense . . .." Rule 29(a), M.R. Crim.P. In determining whether a judgment of acquittal should be entered, a court should approach the evidence from a stand-

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. 22 M.R.S.A., § 2384, at the time of the alleged offense read in pertinent part as follows:
   "Whoever sells . . . Cannabis, Mescaline or Peyote, to any person shall upon conviction thereof be punished . . .."
   This section has since been repealed by Public Laws, 1975, c. 499, § 52, effective May 1, 1976. Its substitute may be found in the provisions of the Maine Criminal Code, Title 17-A, chapter 45.

3. Rule 29(a), M.R.Crim.P. provides in part that
   "[i]f a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve the decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict."

4. Rule 29(b), M.R.Crim.P. provides in part that
   "[i]f the jury returns a verdict of guilty . . . ., a motion for judgment of acquittal may be made or *renewed* within ten days after the jury is discharged or within such further time as the court may fix during the ten-day period. . . .." (Emphasis added)

point most favorable to the State and assume the truth of the evidence offered by the prosecution. See *State v. Blier,* Me., 371 A.2d 1091, 1092 (1977); *State v. Matheson,* Me., 363 A.2d 716, 722 (1976); *State v. Call,* Me., 322 A.2d 64, 66 n. 1 (1974). Thus, leaving questions of the credibility of witnesses and the weight of their testimony to the jury, we view our present task as calling for the application of the limited standard, whether, when consideration is given to the totality of the evidence, the record contains sufficient evidence warranting the jury in finding the defendant guilty beyond a reasonable doubt. See *State v. Matheson,* supra, at 722; *State v. Jackson,* Me., 331 A.2d 361, 364 (1975); *State v. Worrey,* Me., 322 A.2d 73, 77 (1974).

■ The instant case was tried and the present appeal argued before our decision in *State v. Matheson,* supra. Counsel for the defendant requested the trial Court to give the following instruction to the jury:

"Your Honor, I would humbly request Your Honor to give an instruction on entrapment, giving it the objective test which is now being recognized in some states, which states that the predisposition of the Defendant is irrelevant, that the main thing is whether or not the law enforcement agents induced the commission of the offense, using persuasion or other means likely to cause a normally law-abiding person to commit an offense. Now whether or not there was predisposition is not relevant or material." [5]

The Justice, however, refused to instruct the jury on the defense of entrapment in terms of an "objective" concept as suggested by counsel, but rather submitted to them the "subjective" formulation of such defense, in agreement with what this Court later expressly declared to be the law in *State v. Matheson,* supra, and reaffirmed in *State v. McCrillis,* Me., 376 A.2d 95 (1977).

Hence, the rule is that

"when the issue of entrapment is properly generated by the evidence, the burden is upon the State to establish beyond a reasonable doubt *the predisposition* of the accused to commit the crime." [6] *State v. Matheson,* supra, at 722. (Emphasis provided)

The evidence viewed in the light most favorable to the State reveals that, on the night of February 21, 1975, Deborah Conroy, a police undercover agent assigned to the State Department of Public Safety, Division of Special Investigation, in pursuit of her undercover duties, attended on invitation a party in Jay, Maine, at which some forty (40) young people were present. During the course of the evening, a contact person whom she had befriended previously and who had accompanied the undercover agents to the party reported that the defendant was asking fifteen ($15.00) dollars for an ounce of pot. Satisfied with the price, Conroy was directed to the defendant whom she then approached to make a purchase. On her inquiry as to whether he had any pot, Jones replied that he had, and when she asked the price, he said fifteen ($15.00) dollars. She gave him a twenty ($20.00) dollar bill and in return got an ounce of marijuana and a five ($5.00) dollar bill. She testified that the conversation thereafter concerned the possibility of a pound transaction, to which Jones is said to have replied that he could get it and that the price would be one hundred and forty-five ($145.00) dollars.

■ The defendant does not deny selling the agent the marijuana, but, testifying in his own defense, he stated he did not intend

---

5. Under the "objective" formulation theory respecting the entrapment defense, the focus is directed upon the conduct of the state agents rather than upon the predisposition of the defendant to commit the crime charged against him. See *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (dissenting opinion).

6. The "subjective" approach or predisposition theory has been the approved rule in a long line of decisions of this Court, which we are not about to overrule. See *State v. McCrillis,* supra; *State v. Matheson,* supra; *State v. Sherburne,* Me., 366 A.2d 1127 (1976); *State v. Philpot,* Me., 365 A.2d 122 (1976); *State v. Gellers,* Me., 282 A.2d 173 (1971); *State v. Calanti,* 142 Me. 59, 46 A.2d 412 (1946).

to sell to anyone the single ounce of mari-juana which he carried, insisting that he rejected Deborah Conroy's initial requests to purchase the drug. He claims that he agreed to the sale only after she told him a hard-luck story to the effect that she only had an ounce of the stuff and that the people who supplied her would not have any for another week. He conceded that she was pretty and friendly and "thought she was on the make." [7]

■ The issue of entrapment was generated, to be sure. But, we do not agree with the defendant that the evidence taken in its entirety was insufficient to satisfy the jury beyond a reasonable doubt of his predisposition to sell the contraband drug.

The following factors could be considered by the jury as tending to show predisposition. Discounting the defendant's own testimony as the jurors had a right to do, they could view the defendant's sale of the cannabis as being made without hesitation and without need for any prodding whatsoever. The presence of the drug for immediate delivery by reason of its possession on the person of the defendant had some probative value respecting the defendant's underlying state of mind in regards to its pre-intended availability for sale. The defendant's knowledge of the source where the drug could be obtained, and especially in large quantity, carried a persuasive impact respecting the defendant's ready receptivity to any drug transaction. Together with Jones' admission that he was a frequent user and purchaser of marijuana, all the above reference factors, viewed in the aggregate, showed such an involvement with that drug as tended to prove a predisposition in the defendant to commit the crime of which he was charged. See *State v. Matheson,* supra, at page 723.

In conclusion, we hold that the evidence, accepted in the light most favorable to the State, was sufficient to warrant the jury to find beyond a reasonable doubt that the defendant was predisposed to commit the crime of selling cannabis in violation of 22 M.R.S.A., § 2384 and that the undercover agent merely provided the defendant with the opportunity to commit the crime. Thus, the undercover activity was insufficient as a basis for a claim of entrapment. See *State v. Allen,* Me., 292 A.2d 167, 173 (1972).

The entry will be

Appeal denied.

Judgment affirmed.

WEATHERBEE, J., sat at oral argument and participated in conference but died prior to the preparation of the opinion.

DELAHANTY, J., did not sit.

---

**7.** We note that the evidence described the sale as one of marijuana, while the indictment charged the defendant with the sale of cannabis. In this, there was no variance, since cannabis and marijuana have been recognized as synonyms in common parlance, in the scientific world as well as in law. *State v. Alley,* Me., 263 A.2d 66, 70 (1970); *Martinez v. People,* 160 Colo. 333, 417 P.2d 485 (1966); see also 22 M.R.S.A., § 2382 which defines " 'Cannabis,' sometimes called marijuana or marihuana," as including etc.