**Alemu BEEFTU and Genet Beeftu, Plaintiffs–Appellants,**

v.

**CREEKSIDE VENTURES LLC, a Colorado limited liability corporation, Defendant–Appellee.**

No. 00CA1918.

Colorado Court of Appeals, Div. IV.

Nov. 8, 2001.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Sparks, Willson, Borges, Brandt & Johnson, P.C., R. Kenneth Sparks, Scott W. Johnson, Jennifer M. Stokley, Colorado Springs, CO, for Plaintiffs–Appellants.

Retherford, Mullen, Johnson & Bruce, LLC, Neil C. Bruce, Daniel P. D'Acquisto, Colorado Springs, CO, for Defendant–Appellee.

Opinion by Judge STERNBERG.*

Plaintiffs, Alemu and Genet Beeftu, appeal the judgment entered on a jury verdict on their negligence claim against defendant, Creekside Ventures LLC, the developer of the subdivision in which plaintiffs lived. Plaintiffs also appeal the summary judgment entered in the developer's favor on their claim for breach of implied warranty of habitability. We affirm.

Plaintiffs wanted a house with a walkout basement, and they contracted with a builder to construct such a home in Creekside Estates, a subdivision in Colorado Springs. Plaintiffs' house was built on lot 61, which the builder had purchased from the developer.

The grading plan submitted by the developer to the City of Colorado Springs in effect specified that any home built on lot 61 would not have a walkout basement. The final drainage report, which was prepared by an engineering firm hired by the developer, stated that lot 61 "will be provided with adequate grading to convey water from rear yards to the proposed street." This type of grading was incompatible with the lots for walkout basements, which were to be graded so that the water would drain away from the front and back of the house to opposite ends of the property.

The developer filed documents with the city stating that it was familiar with the city code and would comply with the code and the submitted drainage and grading plans. Before selling lot 61 to the builder, the developer graded it to drain from the back of the property to the street in the front in accordance with the final drainage plan. The city inspected and approved the developer's drainage and grading work after it was completed.

After the builder bought the lot, it constructed plaintiffs' house one foot lower than shown in the plans it had submitted to the city for a building permit. The developer did not monitor the construction of plaintiffs' home and did not learn until after it was built that it violated the various plans submitted to the city.

Plaintiffs sued for damages and contract rescission after their basement flooded repeatedly. Although the complaint named both the developer and the builder of plaintiffs' home as defendants, the builder settled with plaintiffs before trial and was dismissed from the suit.

At trial, the developer was allowed to introduce evidence of nonparty acts, even though it was another dismissed codefendant who had designated the nonparty (the builder of homes on two lots adjacent to plaintiffs'

---

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2001.

lot) under the proportionate fault statute, § 13–21–111.5(3)(b), C.R.S.2001.

The jury returned a verdict finding that the developer was negligent but had not caused any of plaintiffs' damages. In light of its determination on the causation issue, the jury did not apportion fault.

Plaintiffs filed a motion for a new trial, which was considered and denied by a judge different from the one who presided over the trial. This appeal followed.

## I.

■ Plaintiffs contend that the trial court erred in granting the developer's motion for summary judgment on their claim for breach of implied warranty of habitability. We disagree.

■ The standard of review is de novo, recognizing that summary judgment is appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Weisbart v. Agri Tech, Inc.*, 22 P.3d 954 (Colo.App.2001).

■ When a developer improves and sells land for the express purpose of residential construction to a purchaser who relies on the developer's expertise, an implied representation arises that the property is suitable for the residential purpose for which it is sold, *i.e.*, habitation. *Rusch v. Lincoln–Devore Testing Laboratory, Inc.*, 698 P.2d 832 (Colo. App.1984). In *Rusch*, a division of this court concluded that an implied warranty of habitability existed where a developer sold a lot to a builder-contractor who constructed his personal home on the property.

The facts of *Rusch* are distinguishable from those here, and the parties devote much of their briefs to discussing whether an implied warranty of habitability extended from the developer to plaintiffs in this case, even though plaintiffs were not the first purchaser of the lot and did not rely on the developer for any purpose.

The trial court assumed that an implied warranty of habitability extended from the developer to plaintiffs, but concluded that the developer did not breach the warranty because "there is no evidence ... that the lot ... was not suitable for residential construction." We agree with the trial court.

The facts here are comparable to those in *Anderson v. Bauer*, 681 P.2d 1316 (Wyo. 1984). There, homeowners in a subdivision sued the developer and the builders of their homes after water seeped into the basements. A soils test report completed before the homes were built revealed a potential water table problem in some areas of the subdivision. These facts did not convince the appellate court that the developer had breached the implied warranty of habitability:

There is no dispute about the fact that all of the subdivided lots are suitable for building homes and that most are suitable for homes with basements. It is also undisputed that some of the lots are not suitable for homes with basements. But, whether the particular house to be built was a house with no basement, a half basement, a tri-level house, or a full basement was a decision not involving the developer. The builder alone made that decision, and he neither sought out nor made inquiry of the developer about it.

The developer furnished lots that were suitable for construction of dwelling houses. That satisfied his duty to the purchasers.

*Anderson v. Bauer, supra*, 681 P.2d at 1323.

In this case, while the lot at issue may have been unsuitable for a home with a walkout basement, there is no evidence that it was unsuitable for other types of homes. The developer graded and sold the lot, but played no part in the construction of plaintiffs' house. The decision to build a home with a walkout basement was the builder's. Therefore, even if we accept the premise that an implied warranty of habitability existed between the developer and plaintiffs, there was no breach of that warranty here.

We reject plaintiffs' contention that the developer failed to meet the burden of proof required for summary judgment. The documents filed by the parties, including plaintiffs' motion opposing summary judgment and motion for reconsideration, indicate that

the design of plaintiffs' house was incompatible with the manner in which their lot and adjacent lots were graded. There is no evidence, however, that the lot as graded was unsuitable for a house that did not have a walkout basement.

Thus, we conclude that the trial court did not err in granting summary judgment for the developer on plaintiffs' claim for breach of the implied warranty of habitability.

## II.

 Plaintiffs contend that the trial court erred by allowing the developer to designate a nonparty at fault under the proportionate fault statute without having given the required notice of the designation before trial. They argue that the developer was required to give such notice even though the codefendant who was dismissed from the case had timely designated the same nonparty. We perceive no reversible error.

Even if we assume that the trial court erred in allowing the developer to rely on the notice given by another party, the error does not require reversal.

Because the jury's verdict addressed causation but did not apportion fault for liability purposes, any error that occurred as to designation of the nonparty did not prejudice plaintiffs' substantive rights and is therefore harmless. *See Askew v. Gerace,* 851 P.2d 199 (Colo.App.1992).

## III.

Plaintiffs contend that the trial court erred by instructing the jury that the builder had a duty to comply with approved drainage plans, but the developer had no duty to ensure that the builder complied with the plans. They argue that the disputed instructions are contrary to the law and conflict with the other instructions that the jury received. Plaintiffs have not preserved this issue for review.

The record indicates that the trial court gave the instructions at issue over plaintiffs' objection, but there is no indication of the basis for the objection. A general objection to an instruction is insufficient to

preserve issues for appellate review. *Ajay Sports, Inc. v. Casazza,* 1 P.3d 267 (Colo.App. 2000). We decline to consider the merits of plaintiffs' contention, given the state of the record.

## IV.

Plaintiffs contend that it was error for a judge other than the trial judge to consider their motion for a new trial. Again, the state of the record precludes review of plaintiffs' contention.

A judge before whom an action has been tried may be replaced if, by reason of death, sickness, or other disability, he or she is unable to perform post-trial duties. C.R.C.P. 63. Plaintiffs argue that this rule was violated here because there is no indication the trial judge was unable to perform his duties for one of the rule's stated reasons.

The party asserting error has the burden of presenting a record that establishes the error. *Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983). Here, the record does not indicate why a substitute judge ruled on plaintiffs' motion for a new trial. We will not presume error from a silent record.

The judgment is affirmed.

Judge RULAND and Judge DAILEY concur.